## Case No. 13,897.

### THOMAS v. GITTINGS.

[Taney, 472.] [1]

Circuit Court, D. Maryland.  April 11, 1844.

BOTTOMRY—NECESSITY FOR—MASTER'S AUTHORITY—ACTS OF OWNER—SUPPLIES—CONSIGNEE.

1. T., the owner of a vessel, of which F. was master, directed her to be employed in running between Savannah and Havana, under a letter of instructions; a cargo of rice was procured, and put on board at Savannah, on the credit of S., the agent of the vessel at that place; in fitting her for the voyage, expenses were incurred to the amount of $219 52, for which a bill was drawn by the master, on the owner, living in Baltimore, and accepted by him; this bill was protested, and demand was made upon the master, at Havana, for its payment; A., the consignee at Havana, gave the master a bill on a

[1] [Reported by Hon. William Cranch, Chief Judge.]

[1] [Reported by James Mason Campbell, Esq., and here reprinted by permission.]

house in Boston, to reimburse S. for the rice which was procured on his credit, and two days before, advanced the master $229 and 4 reals, to take up the protested bill of exchange drawn by him on the owner. While the vessel remained at Havana, supplies were furnished her, and money advanced to the master, by A., her consignee at that place; when the vessel was about to sail again from Havana, bound to Baltimore, a bottomry-bond was executed by the master, in favor of A., the consignee, for the sums advanced by the latter. In an action on this bond: *Held*, that in relation to the bill of exchange for $600, the proceeds of the cargo, and the freight also, might lawfully have been applied by the consignee to pay what was due on the rice, provided the master acted, in regard to the cargo, within the scope of the letter of instructions; and the application of the freight to this purpose would not impair the consignee's right to the bond subsequently taken for supplies afterwards furnished.

2. But, how far the consignee could take a bottomry-bond for sums advanced on the vessel, when he ought to have in his hands freight enough to pay the expenses—quere?

3. That the money was properly advanced to take up the protested bill of exchange, as it was stated in the bill itself, that the money was due for disbursements for the vessel, and chargeable to her account, and the owner, by accepting it admitted that the disbursements were so made and to be so charged.

4. The person who furnished the supplies, for which the bill of exchange was given, waived his lien on the vessel, by taking the bill, and suffering the vessel to proceed on her voyage; but when the owner afterwards refused to pay the bill, and sent the creditor to demand payment from the master, in a foreign port, he must be regarded as authorizing the master to raise the money upon the vessel itself, if he had no other means.

5. If the supplies furnished, and the expenses paid, and money advanced at Havana, were necessary for the vessel, they were a sufficient foundation for the bottomry-bond to the extent of such supplies, expenses, and advances, provided they were furnished on the credit of the vessel; they will not be presumed to have been made and furnished upon the personal credit of the owner or master alone, unless the fact is proved by testimony. The necessity for such supplies need not have been so urgent that the vessel must have been lost to the owner without them; it is sufficient, if, as matters then stood, they may, in the exercise of a discreet and honest judgment, have appeared to be reasonable and proper for the interest of the owner.

[Cited in Nippert v. The Williams, 39 Fed. 826.]

6. The specific objects to which the money was applied, that was advanced to the master, must be shown, in order that the court may judge of the necessity, upon the proof offered.

[Appeal from the district court of the United States for the district of Maryland.]

The libel in this case was filed on the 29th of May, 1843, by the appellee [Lambert Gittings], as assignee of Don Jose V. Adot, against the schooner El Caballero [William Thomas, claimant], on a bottomry-bond. The libellant stated that the schooner El Caballero was lying in the port of Havana, in the island of Cuba, on the 10th of May, 1843, destined upon a voyage from said port to Baltimore; that the master of said vessel (Henry Fitzgerald) being in want of money to provide supplies for, and to meet the disbursements of said schooner, and to enable her to make her contemplated voyage to Baltimore, and having no other means of procuring the same, borrowed of Don Jose V. Adot, eight hundred and ninety-two dollars and one real, upon the bottomry of said schooner, and that the same was advanced and paid accordingly, at the rate of ten per cent. for the adventure and risk, making together the sum of nine hundred and eighty-one dollars and two and one-half reals; and that the said Fitzgerald, on the said 10th of May, 1843, executed a bottomry-bond, pledging said vessel for the payment of said sum of money, within three days after her arrival at Baltimore, or before her cargo should be discharged. That the money was advanced by said Adot to said Fitzgerald, for the purpose aforesaid, and was necessary therefor, and that the schooner could not have performed her contemplated voyage, if the same had not been advanced and paid as aforesaid; that the vessel being so supplied, proceeded from Havana to Baltimore, where she arrived on the 23d of May, 1843, and completed the discharge of her cargo on the 26th of the same month. That by assignment, duly acknowledged, the bottomry-bond was, on the day of its execution, assigned to Lambert Gittings, the libellant, who thereby became entitled to receive the amount due thereon, of which said Fitzgerald received due notice; that the amount due on said bond had not been paid, although the same had been demanded of said Fitzgerald, and that the libellant was entitled to receive the said sum of nine hundred and eighty-one dollars and two and one-half reals, with interest, at the rate of six per cent. from the time it became due. The libellant filed with his libel, the bottomry-bond and assignment.

The answer of William Thomas, owner and claimant of the vessel, admitted that she was at Havana on the 10th of May, 1843; that said Fitzgerald was her master; that she was destined upon a voyage to Baltimore, and that said bottomry-bond was executed by said Fitzgerald. But he denied that said Fitzgerald was then in want of said sum of eight hundred and ninety-two dollars and one real, to provide supplies for, or to meet the disbursements of said schooner, or to enable her to make her contemplated voyage to Baltimore; and he also utterly denied that the said Henry Fitzgerald, as such master, had no other means, than upon the bottom of said schooner, of procuring such sum, if any, as he might have so needed; and he also denied that said Adot did advance to Fitzgerald, as such master, said alleged sum. He admitted that said schooner proceeded on and accomplished her voyage, and he also admitted the assignment of the bond, and that the same had not been paid. That it was falsely alleged in the libel that the sum there mentioned was advanced by said Adot, and was necessary to enable Fitzgerald to provide supplies for

and meet the disbursements of the vessel, and to enable her to make her contemplated voyage; and it was also falsely alleged that she could not have accomplished her voyage without said alleged advance. That a part of said pretended advance was an alleged claim of Fitzgerald against respondent, for alleged disbursements on a former voyage, and was paid to and received by him for his own use, and not otherwise. That Don Jose V. Adot, on the said 10th of May, 1843, or prior thereto, had received, to the respondent's use, several large sums of money, that is to say, four hundred and forty six dollars, received by him on the 18th of March, as the net proceeds of certain tierces and barrels of rice, the property of respondent, also, two hundred and eighty-seven dollars and four cents, received as her freight on her contemplated voyage to Baltimore; and also, twenty-three dollars and four reals, received on the 18th day of March, to respondent's use; which sums had not been accounted for, to respondent, by said Adot. That there was no necessity, at the time, and under the circumstances, when said bottomry-bond was executed, for the said alleged advances by the said Don Jose V. Adot; and that in consideration of the premises said Fitzgerald had no right to execute said bond, and the same was void.

A decree for the libellant was passed by the district court, Heath, J. [case unreported]; and an appeal to this court was taken and argued. The testimony adduced is substantially stated in the opinion of the court.

William Schley, for appellant.
John Nelson, for appellee.

TANEY, Circuit Justice. The libel in this case is filed against the schooner El Caballero, upon a bottomry bond, executed by Henry Fitzgerald to Jose V. Adot, at Havana, to secure the payment of $981, 2½ reals; the said Fitzgerald, being the master of the schooner; and William Thomas, as the present claimant, the owner; the bond is dated May 10th, 1843.

It appears from the evidence, that Thomas, the owner of the vessel, on the 1st of December, 1842, at Havana, executed a bottomry-bond to the said Fitzgerald, for the sum of $609, for money at that time loaned to him, and on the same day, appointed Fitzgerald master, and gave him a power of attorney to sell her for any sum not less than $6,000; and by a letter of instructions of the 10th of the same month, he directed the schooner to be employed in running between Savannah and Havana, if freight could be procured, or to take freight from either of those ports to other places, if the master should find it for the interest of the owner to do so, until a sale could be affected.

Thomas returned to Baltimore, where he resided, and Fitzgerald took command of the vessel and made two voyages to Savannah and back again to Havana. On the last of these voyages, the vessel was laden with rice, which was procured at Savannah, upon the credit of Sorel, who was there the agent of the schooner, and she arrived at Havana early in March, 1843. In fitting her for this voyage, expenses were incurred at Savannah to the amount of $219.52, for which a bill was drawn by the master on Thomas, and accepted by him; but the bill was afterwards protested in Baltimore for non-payment, and notice of the protest reached the master at Havana, shortly after he arrived on the voyage last mentioned, with a demand upon him for the payment of the bill. Jose V. Adot was the consignee of the schooner at Havana, and it appears by the accounts, that on the 11th of March, 1843, he gave Fitzgerald a bill on a house in Boston for $600, and on the 9th of the same month, advanced him $229 and 4 reals to take up the protested bill, and pay the costs and charges upon it. The net proceeds of the cargo of rice appears to have been $446 and the freight $287 and 4 reals; there is some difficulty on the testimony as to these sums and dates, which require further explanation. The bill for $600 is stated to have been given to reimburse Sorel for the rice which was procured on his credit; but I do not understand who were the owners, nor how it happens that $600 was remitted in payment of a cargo which netted only $446. The whole cargo could not have been purchased on account of the vessel, as the letter of instruction authorized the master to take an interest of one-fourth or one-third only; nor is it said that the shipment was a losing one; and it is necessary that the character of this transaction should be more clearly shown, before I can determine what influence it ought to have, if any, on the validity of the bottomry. So too, in regard to the money advanced to pay the protested bill; it is charged in the account on the 9th of March; yet the protest was made in Baltimore, and is dated on the 10th, and consequently, there could have been no notice received at Havana at the time this advance is stated to have been made. Perhaps there is some mistake as to the date given in the account.

The vessel remained at Havana about two months, no freight offering during that time, and the master not being able to sell her for the sum limited. While she was so lying at that port, supplies were furnished and money advanced to the master by Adot, the consignee, and on the 10th of May, 1843, when the schooner was about to sail for Baltimore with a cargo of molasses, the bottomry was given which is now in question.

In relation to the item of the bill of exchange for $600, undoubtedly, the proceeds of the cargo and the freight also, might lawfully have been applied by the consignee to pay what was due on account of the rice, provided the master acted within the scope of his instructions in regard to this cargo; and

the application of the freight to this purpose, would not impair his right to the bond subsequently taken, for supplies afterwards furnished. But if that bill was for a larger amount than the sum justly due on account of this cargo, or if the owner was not liable to the full amount thus paid, then the freight may have been misapplied, and the question will arise how far the consignee can take a bottomry on the vessel, when he ought to have had in his hands freight enough to pay the expenses.

The money advanced to pay the protested bill stands upon different ground. It is stated in the bill itself, that the money was due for disbursements for the schooner, and chargeable to her account, and the owner by accepting it, admits that the disbursements were so made, and to be so charged. Undoubtedly, the party who furnished the supplies waived his lien on the vessel, by taking the bill and suffering the vessel to sail on her voyage; but when the owner afterwards refused to pay the bill, and the protest and demand for payment, finds the master in a foreign port, without any funds of his own in his hands, out of which the payment may be made, what is he to do? Must he suffer himself to be thrown into prison, and separated from the property intrusted to his care, and leave it to be attached and sold under legal process? I think not. It is the interest of the owner, as well as the master, that the money should rather be raised on the pledge of the vessel. And when the owner thus refuses to pay the debt due from him, and sends the creditor to demand payment from his master on board of his vessel in a foreign port, he must be regarded as authorizing the master to raise the money upon the vessel itself, if he has no other means; such at least are the dictates of equity and justice, and I am not aware of any principle of admiralty law which requires the court to give a contrary decision. This item might, therefore, have been properly included in the bond.

In relation to the other accounts, embracing that of Caberga, which was paid by Adot, I am not prepared to express an opinion upon these, without a more careful examination. If the supplies furnished, and the expenses paid, and the money advanced, were necessary for the vessel, they were certainly a sufficient foundation for the bottomry-bond, to the extent of such supplies, expenses and advances, provided they were furnished on the credit of the schooner; and they will not be presumed to have been made and furnished upon the personal credit of the owner or master alone, unless the fact is proved by testimony.

When I speak of the necessity of such supplies, I do not mean to say that they must appear to have been so urgent that the vessel must have been lost to the owner without them; it is sufficient, if, as matters then stood, they may, in the exercise of discreet and honest judgment, have appeared to be reasonable and proper for the interest of the owner. But the specific objects to which the money advanced to the master was applied, must be shown, in order that the court may judge of the necessity, upon the proofs offered.

The papers and accounts are, therefore, referred to J. Mason Campbell, Esquire, one of the commissioners of this court, with directions, after notice to the parties concerned, to take the testimony of Henry Fitzgerald, and such other witnesses as may be produced by either party, and to report to this court, on or before the third day of January next, what items of the supplies, charges, expenses and advances were necessary, and also to reduce to writing and report the testimony of the witnesses, which may be examined before him. I have pointed out some of the obscurities in the evidence already offered, in order to direct the attention of the commissioner to that portion of the controversy, and he will state the account according to the principles of law hereinbefore mentioned and decided.

On the 4th of January, 1844, the commissioner filed the following report and account:

To the Honorable Roger B. Taney, Circuit Judge of the United States in and for the Fourth Circuit and District of Maryland:

The report of the commissioner, appointed by the order of your honor, passed on or about the 20th day of November, 1843, in this cause, to take testimony, etc., humbly showeth:

That at the instance of the libellant, he proceeded, upon notice to the respondent, and in presence of the proctors of both sides, to take the testimony of Henry Fitzgerald, late master of the schooner El Caballero, upon oath, and that the said witness testified as follows: That the date of the payment made by Adot to him, to take up the protested bill, was on the 9th or 10th of April, 1843, and not on the 9th of the preceding month, as erroneously entered in Adot's account current. That the draft was sent out to Havana, by James J. Fisher, of Baltimore, and lodged by him with the house of Deconnix, Spalding & Co., which firm was, he thinks, the same as Jose V. Adot; that the money was paid to deponent by Adot, under the advice of General Campbell, the United States consul at Havana, and his friends. That no suit was brought or threatened upon the draft, and no arrest made; that it was paid at once, because they were treating for the sale of the vessel at the time, and did not wish to have any claim outstanding against her, and because Sorel would hold deponent liable on the draft.

That as to the draft of six hundred dollars on Boston, it was drawn early in March, when the vessel had a credit both for the

amount of sales of the rice and the freight, and half-commissions on the sales. It was drawn partly to reimburse Sorel, the consignee of the schooner at Savannah, for the rice bought there by him, and sent by the schooner to Havana. Sorel bought it without funds, on the vessel's account, and on deponent's promise that the proceeds of the rice, as soon as sold, should be transmitted him; there was a profit on the transaction. The net proceeds of the draft, at Savannah, were five hundred and twenty-eight dollars; and of this sum four hundred and ten dollars and fifty cents went to the reimbursement of Sorel for the rice, with interest and postages on the same account, and the balance went to pay deponent on account of wages and advances due him by the vessel. The draft was obtained before he contemplated the bottomry, which was not executed until May; at the time it was procured, she was waiting a sale, not freight. The draft was drawn in Sorel's favor, and sent to him, and was received by deponent from Adot. The account herewith exhibited will show the application of the proceeds of the draft. His owner knew neither Sorel nor Adot, and deponent's going to them was of his own motion The Deconnix, Spalding & Co., mentioned in the account filed by deponent as part of his examination, was Jose V. Adot: that firm was in liquidation at the time.

In relation to the advance of two hundred and thirty-six dollars, made in different sums, on the 13th March, 26th April, and 6th and 10th May, Caberga's account: deponent recollects that part of the money received by him, either from Adot or Caberga, was paid to the mate on account of deponent's indebtedness to him, and not as wages; the amount so paid was about fifty dollars, and at the time, the vessel was indebted to deponent, in a much larger amount. The items appearing in deponent's account current with the schooner, which is filed among the papers in the case, and amounting to ninety-four dollars and eighty-seven cents, were purchased with the advances received either from Adot or Caberga; these articles were all necessary for the schooner. The supplies appearing in Caberga's account were all for the schooner (with the exception of the two boxes cigars, there marked "Self," and bought for deponent) and were all necessary for the vessel. The schooner was always indebted to deponent while in Havana, and part of the money which he received from Adot and Caberga was drawn by him for his owner's expenses. Adot advanced the sum of two hundred and thirty-six dollars he charges, and Caberga the one hundred and two dollars charged him. The former also advanced the amount of the protested bill.

The provisions, &c., charged in Caberga's account, and those in his own list of charges already mentioned, and amounting to ninety-

four dollars and eighty-seven cents, were for the general sustenance of himself and crew; they lived aboard the schooner. He brought home with him about thirty or forty dollars of the money he received. On his return to Baltimore, the day after the schooner arrived, and before her discharge of her cargo, he applied to and received from Mr. Gittings, two hundred and fifty-two dollars and twenty-five cents; the occasion of applying was for pilotage, for which he would otherwise have been sued. The schooner arrived on the 23d of May 1843.

That upon the testimony so taken he has stated an account which shows the amount properly secured by the bottomry, and that, in stating it, he has reduced the Spanish real to American money, at the rate of twelve and a half cents the real.

All which is respectfully submitted,

J. Mason Campbell.

4 January, 1844.

Cost of report and audit $10.

### Schooner El Caballero in Account with Jose V. Adot.

**Dr.**

| | | |
|---|---|---|
| To amount of "disbursements" for the schooner, as set down in the particular account thereof, filed among the papers......$842 37½ | | |
| After deducting cash therein charged as paid to Capt. Fitzgerald.........................$236 00 | | |
| And Caberga's account charged therein................. 226 31¼ | | |
| | 462 31¼ | |
| | | $ 340 06¼ |
| Cash paid by Adot to Capt. Fitzgerald, for the schooner, being her share of the $94.87, referred to in the deposition............................. | 53 84 | |
| Supplies furnished by Caberga, deducting two boxes cigars................................... ............... | 119 83 | |
| Cash paid by Caberga to Capt. Fitzgerald, for the schooner, being his share of the above $94.87..................... | 41 03 | |
| Commissions of 2½ per cent. on the above $554.76..................... | 13 86 | |
| Bill on Boston, to reimburse Sorel, $410.50, and the premium necessary to make it cash in Savannah...................... | 418 71 | |
| Money advanced to pay protested draft......... | 229 50 | |
| Commission on outward freight....................... | 12 02½ | |
| Ten per cent. on amount of bottomry............. | 47 24 | |
| | $1,276 69 | |
| To Jose V. Adot, on bottomry-bond $519.69. | | |

**Cr.**

| | | |
|---|---|---|
| By net proceeds of rice................................... | | $ 446 00 |
| ½ commission on do........................................ | | 23 50 |
| Amount of freight........................................... | | 287 50 |
| Bottomry-bond....................................$472 45 | | |
| Ten per cent., maritime risk................... 47 24 | | |
| | | 519 69 |
| | | $1,276 69 |

To which report and account the libellant filed the following exceptions:

The libellant in this case begs leave to except to the report and account filed in this cause by J. M. Campbell, Esq., commissioner. Because the said commissioner has deducted from the account of disbursements filed in the cause by the libellant, the sum of two hundred and thirty-six dollars, charged therein as cash paid to Capt. Fitzgerald, and also the sum of two hundred and twenty-six dollars and thirty-one and a quarter cents, charged therein as Caberga's account. And also because the said commissioner has refused to allow the said libellant other char-

ges constituting part of his claim, to which he was legally entitled.

J. Nelson, Proctor for Libellant.

On the 11th of April, 1844, the above exceptions having been withdrawn, THE COURT (TANEY, Circuit Justice) passed the following decree:

By the circuit court of the United States, for the Fourth circuit, in and for the district of Maryland. The within exceptions having been submitted without argument, and on the exceptant's assent, in open court, that the same should be overruled; it is, thereupon, this 11th day of April, in the year of our Lord eighteen hundred and forty-four, adjudged and ordered that the same be and they are hereby overruled, with costs to be taxed by the clerk.

It is also hereby ordered and decreed, that the decree of the district court, dated 7th July, 1843, and from which the present appeal was prayed, be and the same is hereby reversed, with costs of the appeal to be taxed by the clerk of this court. And it is also further ordered and decreed, that out of the fund in court, deposited with the clerk of this court, the sum of five hundred and nineteen dollars and sixty-nine cents, without interest, be paid to the libellant or his proctor; and that the residue of said sum be paid to the said William Thomas, the appellant, or his proctor, after deducting thereout all the costs and expenses incurred in the proceedings in the district court, prior to the appeal to this court, and which costs and expenses incurred in the said district court are hereby ordered and directed to be paid by the said William Thomas.